THE STATE, EX REL. BUXTON, APPELLEE, *v.* DALZELL ET AL., APPELLANTS.

(No. 11158—Decided July 27, 1970.)

*Messrs. Tyler, Kane & Rubin,* for appellee.

*Messrs. Beirne, Wirthlin & Manley,* for appellant William L. Ahlert.

*Mr. William A. McClain* and *Mr. William H. Brewe,* for appellants Jack W. Dalzell, Harold R. Latimer, Arthur F. Hull, Jr., Richard L. Krabach and city of Cincinnati.

Hess, J. This is an appeal on questions of law from the Court of Common Pleas, Hamilton County, which court granted summary judgment in favor of the relator, appellee herein, vacating the appointment of William L. Ahlert, one of the respondents, who are appellants herein, to the position of commissioner of buildings, city of Cincinnati.

The relevant facts necessary for a determination of this matter are not in dispute. It appears from the record that after Edward R. Buxton, hereinafter referred to as relator, filed his original petition there were amended petitions, motions and demurrers filed by the parties culminating in a second amended petition by the relator, answers to that petition by the following named respondents: Jack W. Dalzell, Harold R. Latimer and Arthur F. Hull, constituting the civil service commission of the city of Cincinnati; William L. Ahlert individually and as commissioner of buildings of the city of Cincinnati; Richard L. Krabach, city manager of the city of Cincinnati; and the city of Cincinnati.

On November 12, 1969, the respondent William L. Ahlert, hereinafter referred to as Ahlert, filed a motion for summary judgment on his behalf supported by his own affidavit and affidavits of respondent Harold R. Latimer, and Donald F. Hunter, former commissioner of buildings. On December 3, 1969, the relator filed a motion for summary judgment accompanied by an affidavit of Carl B. Rubin, former member of the civil service commission of Cincinnati, in support of relator's motion for summary judgment. On January 8, 1970, the trial court entered a judgment pursuant to his written opinion of December 17, 1969, wherein the appointment of Ahlert as commissioner

of buildings of the city of Cincinnati on August 22, 1968, was "vacated and set aside."

In its judgment entry, the trial court further ordered the writ of mandamus prayed for in relator's second amended petition "granted and respondents Dalzell, Latimer and Hull, constituting the civil service commission of Cincinnati, are ordered to fill the position of commissioner of buildings by holding a competitive examination therefor"; that "such competitive examination shall be open to a category of qualified employees below the rank of deputy commissioner of buildings." It was "further ordered by the trial court that relator, in accordance with R. C. 733.61, recover his costs and as part thereof a reasonable compensation for his attorney." Thereafter, a "motion for judgment notwithstanding the judgment heretofore entered herein, or in the alternative, motion for new trial" was filed by Ahlert. The other respondents also filed motions for judgment notwithstanding the judgment. Those motions were overruled.

It is undisputed that the relator is a citizen and taxpayer of the city of Cincinnati and a registered engineer employed in the classified civil service of the city of Cincinnati in the building department in a position below that of the building commissioner.

The evidence discloses that Ahlert had been in the service of the city of Cincinnati for thirty-one years, during which time he served as building inspector, plan examiner, assistant engineer, assistant commissioner of buildings, deputy commissioner of buildings, and presently commissioner of buildings in the building department. He was appointed assistant commissioner of buildings in 1961, after a competitive examination. In June 1963, that position was abolished and the duties thereof were split between two positions known as deputy commissioner of buildings, to which he was appointed as the deputy commissioner of buildings in charge of structural matters. In such position he acted in behalf of the then building commissioner, Donald Hunter, when Mr Hunter was absent. In August 1968, when Mr. Hunter retired, Ahlert was appointed to his position without civil service examination.

His appointment was approved by the civil service commission after a finding that only Ahlert and George Wehrung, the other deputy building commissioner, possessed the qualifications necessary for the position of commissioner of buildings and that Mr. Wehrung, then seventy years old, declined to be considered for the position.

The affidavits in support of Ahlert's motion for summary judgment filed by J. Dan Hallihan, Donald Hunter, Richard Krabach and Ahlert present in detail, without contradiction, the education, training, qualification, experience and seniority in the building department of Ahlert. Those affidavits further list the many and varied responsibilities of the commissioner of buildings and draw attention to the fact that the department has been certified by the state of Ohio since 1962 as meeting the requisites as to number and qualifications of staff and budget as a building department qualified to enforce the Ohio Revised Code relating to building regulations.

The commission or department to which Ahlert was appointed employs approximately one hundred twenty-five persons and operates under a budget of about two million dollars per annum.

In the administration of his position as building commissioner, Ahlert is in charge of all employees in the building department and the administration of all ordinances, statutes and laws of the city of Cincinnati and state of Ohio, respectfully, in relation to the functions of the building department, including general administration, zoning, plan examination, permits, general building inspection, inspection of housing, plumbing, elevators, electrical equipment, heating, ventilating, and the general enforcement of the building code.

The evidence is undisputed that Ahlert is excellently qualified as a graduate engineer, registered architect and, by experience, able to perform all the duties of a building engineer.

The uncontradicted affidavit of J. Dan Hallihan, personnel officer and secretary of the civil service commission, in August 1969, states that when it approved the appointment of Ahlert to the position of commissioner of build-

ings, without examination, such action was taken "because the only other person who would have been eligible for the position was George Wehrung, who was also a deputy commissioner of buildings and who was seventy years old and did not wish to be considered for appointment, and because William L. Ahlert was considered to be the most qualified person for the appointment because of his long experience in the building department, his excellent record, his familiarity with the various duties required and the various activities of the building department, and because of his experience in performing the duties of building commissioner while he was deputy building commissioner, together with the information of the civil service commission on William Ahlert's record."

Further, that the promotion of Ahlert "was in accordance with the policy of the civil service commission which had been adopted in many other cases of promoting persons to positions without examination when an examination would not be practicable." This policy is in keeping with Rule XI, Sections 1 and 6, of the commission and also in accordance with R. C. 143.24.

The only affidavit filed in support of the motion for summary judgment on behalf of the relator was that of his counsel, Carl Rubin, in which he states he had been a member of the civil service commission; that he is familiar with the rules of the civil service commission; that the administrative structure of the city of Cincinnati is determined by ordinance passed by council known as the administrative code, which code specifically identifies the department heads of the city of Cincinnati, each of whose appointment is not within the jurisdiction of the civil service commission; that such administrative code provides for divisions within each department and the heads thereof are in the classified service and within the jurisdiction of the civil service commission.

The issues to be determined herein are: (1) whether the commissioner of buildings of Cincinnati is the head of a department and, therefore, in the unclassified service and subject to be appointed without competitive examination pursuant to R. C. 143.08 (A) (3); (2) did the civil

service commission of Cincinnati have the authority to appoint Ahlert as building commissioner under R. C. 143.-23 (B) without competitive examination; and (3) are promotions authorizied under R. C. 143.24 where the requirements of the position to be filled are such that it is impracticable to hold a civil service examination. We will consider these issues in the order of their listing.

As to whether Ahlert is the head of a department, R. C. 143.08, insofar as it is pertinent here, provides:

"The civil service of the state and the several counties, cities, * * * shall be divided into the unclassified service and the classified service.

"(A) The unclassified service shall comprise the following positions, which shall not be included in the classified service, and which shall be exempt from all examinations required by Sections 143.01 to 143.48, inclusive, of the Revised Code:

"* * *

"(3) The members of all boards and commissions, and heads of principal departments, boards, and commissions appointed by the governor or by and with his consent; and the members of all boards and commissions and all heads of departments appointed by the mayor or, if there is no mayor, such other similar chief appointing authority of any city * * *."

This statute clearly established that in order to qualify for appointment without examination in the state service, the person involved must be the head of a "principal department." No such requirement exists with respect to the head of city departments. It is well established that the duties of commissioner of buildings are of such magnitude as to require a special department, commission or division. The commissioner is required to act in a managerial, supervisory and administrative capacity. The fact that the commissioner of buildings is directly responsible for the actions of about one hundred and twenty-five employees, and an operating budget of about two million dollars, establishes it as a principal department of the city of Cincinnati regardless of whether it be designated a division, commission or department.

R. C. Chapters 3781 and 3791 recognize that the building division of the city of Cincinnati functions as a building department in matters of state law. R. C. 3781.10 (E) qualifies the city of Cincinnati to be certified for the enforcement of the state building laws. This section refers to the municipal building department.

In determining the question of whether the commissioner of buildings of the city of Cincinnati is the head of a department, the trial court made reference to the administrative code of the city, which code refers to the building department as a ''division of buildings, not a department'' and, therefore, such designation by city council in the administrative code is conclusive and prevents the office of commissioner of buildings from being recognized as a department. Such determination is an over simplification.

The provisions of R. C. 143.08 (A) (3) provide that heads of principal departments of the state of Ohio are in the unclassified service, and the heads of departments of muncipalities are in the unclassified service. This statute recognizes that cities give different titles to the same kind of service performed.

Article VII of the charter of the city of Cincinnati creates four ''departments'' but it does not name all of them ''departments.'' They are referred to as ''city solicitor,'' ''finance department,'' director of ''public utilities,'' and ''water works.'' The charter further provides for a ''police force'' and a ''fire force,'' not police or fire departments which is the terminology for them throughout the Revised Code.

The administrative code of the city and the city charter are not in accord as to titles of functions to be performed. The charter names a board of park commissioners, planning commission, board of health and public recreation commission, but they are referred to and publicized as park, planning, health and recreation departments in the administrative code enacted by council. Further, the administrative code enacted by council designates the city solicitor and his staff, the department of law. It creates a ''department of safety'' and places the ''police force'' with a ''division of women police'' and ''fire force'' within it.

Other ordinances of the city refer to the police and fire "divisions" along with the building division and completely ignore the existence of the division of women police, particularly as they refer to budgetary matters.

It would serve no purpose to further elaborate on the inconsistencies of titles found in the charter, administrative code and other ordinances of the city, but these inconsistencies are not capable of demonstrating that the commissioner of buildings does not head a department. The Ohio Revised Code does that specifically. The commissioner of buildings is in fact the head of a department regardless of its title.

In relation to the building department, the Ohio Revised Code provides that non-charter cities operating under the general statutory form of government, building departments are under the jurisdiction of the director of safety (R. C. 737.02) who is the administrative head of the department of safety (R. C. 737.01). Included in the department of safety are the police and fire departments and the departments of charity and correction. Thus the Revised Code specifically contemplates departments within departments. It would appear obvious that the legislature intended to create departments within which other departments are located that are considered "principal departments of the state" (R. C. 143.08 (A) (3)).

R. C. Chapters 3781 and 3791 relate to state building code provisions and enforcement. R. C. 3781.10 (E) mandates that the state board of building standards shall certify municipalities having a building department to enforce R. C. Chapters 3781 and 3791, the state building code, if those building departments meet specified qualifications. The city of Cincinnati has met those qualifications and has been so certified since the requirement of such certification in 1962. It must be concluded from the undisputed facts that the commissioner of buildings, William L. Ahlert, is the head of the building department of the city of Cincinnati. The facts presented herein establish in fact that the building department is a principal department.

We now consider the question of whether the civil service commission of Cincinnati had authority to appoint

Ahlert as building commissioner without a competitive examination.

R. C. 143.23 deals in its entirety with provisional, temporary, emergency, interim, and exceptional appointments. Only paragraph (B) is involved in the instant case. It reads as follows:

"(B) In case of a vacancy in a position in the classified service where peculiar and exceptional qualifications of a scientific, managerial, professional, or educational character are required, and upon satisfactory evidence that for specified reasons competition in such special case is impracticable and that the position can best be filled by a selection of some designated person of high and recognized attainments in such qualities, the director may suspend the provisions of Sections 143.01 to 143.48, inclusive, of the Revised Code, requiring competition in such case, but no suspension shall be general in its application, and all such cases of suspension shall be reported in the annual report of the director with the reasons for the suspension."

In harmony with R. C. 143.23 (B), the civil service commission, under Rule XI, Section 6a, on the subject of "promotion without examination," has provided as follows:

"a. If a vacancy exists in a classification requiring peculiar and exceptional qualification of a scientific, managerial, professional, or educational character, and the appointing authority established in writing to the satisfaction of the Commission that only one subordinate employee of the deparment has such qualifications, promotion may be approved under Section 143.23 (B), Revised Code."

The reference to R. C. 143.23 (B) by the civil service commission in its rules cannot be deemed to limit the operation of that section to promotional appointments only. The city charter does not grant the commission authority to vary the state civil service laws. R. C. 143.30 authorizes the civil service commission to make rules in accordance with the law.

It is undisputed that the civil service commission, in keeping with its rules and R. C. 143.23 (B), made a specific finding that a competitive examination was impractical

in the instant case. By their action, they found Ahlert was the only qualified person eligible for the job of commissioner of buildings who desired appointment thereto.

Counsel for the relator contends that the case of *Hunter* v. *Harrell*, Court of Appeals for Hamilton County, No. 8883, holds that the position of commissioner of buildings does not require special qualifications permitting appointment without examination. That case upheld the appointment of Hunter as commissioner of buildings without examination on the basis of his managerial and administrative skills which the position required.

Accordingly, we hold that the appointment of Ahlert to the position of commissioner of buildings without examination was in keeping with Rule XI, Section 6, of the rules of the civil service commission, and R. C. 143.23 (B).

Finally, we consider whether promotions are authorized under R. C. 143.24 where the requirements of the position to be filled are such that it is impracticable to hold a civil service examination.

The Ohio Constitution provides in Article XV, Section 10, that: "Appointments and promotions in the civil service of the state, the several counties, and cities, shall be made according to merit and fitness, to be ascertained, as far as practicable, by competitive examinations. Laws shall be passed providing for the enforcement of this provision."

To implement this provision of the constitution, the legislature enacted R. C. 143.23, providing for promotions.

Both the Constitution and statutes provide for practicability as the test for need for a competitive examination. Thus, it would appear the first thing a civil service commission must determine in filling a position is whether it is practicable to fill that position by promotion. In the instant case the commission made such a determination. It is uncontradicted that Ahlert and George Wehrung were found qualified and eligible for the promotion. When George Wehrung declined to be considered it left no other person with the experience, training, education and required qualifications to compete for the promotion.

The eligibility or qualification for promotion is left to

the civil service commission under its rules. R. C. 143.24 requires that the commission "* * * provide that vacancies shall be filled by promotion in all cases where * * * it is for the best interest of the service." The commission was in the exercise of its discretion when it adhered to its practice of restricting promotion to the next lower echelon. The practice of restricting eligibility for promotion to persons in the next lower class or strata has been approved in the case of *State, ex rel. Hoskins,* v. *Board,* 92 Ohio St. 457. See 9 Ohio Jurisprudence 2d 413, *Civil Service,* Section 87; *State, ex rel. Marshall,* v. *Civil Service Commission,* 14 Ohio St. 2d 226; *State, ex rel. Schmidt,* v. *Harter,* 43 Ohio App. 503.

We conclude that Ahlert alone was fully qualified for promotion to the position of commissioner of buildings, and under R. C. 143.24 his promotion was practicable; that a competitive examination was neither practicable nor in the best interest of the city of Cincinnati; and that his promotion was a mandatory duty of the civil service commission and the city manager.

The judgment of the Court of Common Pleas is reversed and final judgment entered affirming the appointment of Ahlert as commissioner of buildings, city of Cincinnati.

*Judgment reversed.*

SHANNON, P. J., concurs.
HILDEBRANT, J., not participating.